## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ARTURO MANUEL GUTIERREZ SOSA, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. CIV-25-1257-PRW |
| RUSSELL HOLT, *et al.*, | ) ) ) | |
| Respondents. | ) | |

### AMENDED ORDER

This Order is amended solely to correct clerical errors in statutory citations. No substantive changes are made.

Before the Court is a Report and Recommendation (Dkt. 10), which recommends that the Court grant in part Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) and order Respondents to either provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) or release him. Respondents timely objected (Dkt. 11). For the reasons given below, the Court declines to adopt the Report and Recommendation (Dkt. 10) and **DENIES** the Petition (Dkt. 1).

1

*Background*

This is a habeas claim, filed pursuant to 28 U.S.C. § 2241(c)(3).[1] Petitioner illegally entered the United States in or about November 1999, without being inspected or admitted.[2] Petitioner claims that he has continuously resided in the United States since his entry.[3] On July 8, 2025, a Notice to Appear was issued to Petitioner, which ordered him to appear as "an alien present in the United States who has not been admitted or paroled."[4] ICE arrested him on October 8, 2025.[5]

After arrest, ICE began removal proceedings against Petitioner pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), because Petitioner entered the country without inspection.[6] Petitioner wasn't afforded a detention hearing because ICE says he is detained pursuant to 8 U.S.C. § 1225(b)(2), which requires mandatory detention.[7] Petitioner, however, believes he is detained pursuant to 8 U.S.C. § 1226(a), which doesn't require detention and permits bond when detention occurs. The Petition requests that Petitioner either be given a detention hearing or released.

---

[1] "Challenges to immigration detention are properly brought directly through habeas." Report and Recommendation (Dkt. 10), at 3 (quoting *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004)).

[2] R&R (Dkt. 10), at 2.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

*Legal Standard*

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."[8] An objection is "proper" if it is both timely and specific.[9] A specific objection "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."[10] Additionally, "[a]n 'objection' that merely reargues the underlying motion is little different than an 'objection' that simply refers the District Court back to the original motion papers; both are insufficiently specific to preserve the issue for de novo review."[11] In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.[12]

*Analysis*

**I.   Jurisdiction**

The Report first recommends that the Court find that it has jurisdiction to consider the Petition. Respondents object, first noting that Petitioner failed to respond to Respondents' challenges to jurisdiction and arguing it is inappropriate for the Court to

---

[8] Fed. R. Civ. P. 72(b)(3).

[9] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

[10] *Id.* (citation and internal quotation marks omitted).

[11] *Vester v. Asset Acceptance, L.L.C.*, No. 1:08-cv-01957-MSK-LTM, 2009 WL 2940218, at *8 (D. Colo. Sept. 9, 2009) (citing *One Parcel of Real Prop.*, 73 F.3d at 1060).

[12] *Summers v. State of Utah*, 927 F.2d 1165, 1167–68 (10th Cir. 1991).

serve as Petitioner's advocate. But the Court can of course *sua sponte* examine whether it has subject matter jurisdiction, and it will do so here.[13]

The Court harbors serious doubts over whether it has jurisdiction over this case. 8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." While this jurisdiction stripping statutes seems to sweep in most every type of cause or claim an alien detained under this chapter might bring, the Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee* held that this "provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"[14] The Court went on to say that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."[15]

That may well be correct, but here it seems that Petitioner *is* challenging one of the enumerated "discrete events." While not an exhaustive list of what is covered by § 1252(g)'s jurisdictional bar, the Supreme Court has explained that actions "asking for review of an order of removal; . . . challenging the decision to detain [an alien] in the first

---

[13] *Potts v. U.S.*, 824 F. Supp. 1014, 1016 (W.D. Okla. 1992) (citing *Koerpel v. Heckler,* 797 F.2d 858, 861 (10th Cir.1986); *Tafoya v. United States Dept. of Justice, Law Enforcement Assistance Admin.,* 748 F.2d 1389, 1390 (10th Cir.1984)).

[14] 525 U.S. 471, 482 (1999) (emphasis in the original).

[15] *Id.*

place or to seek removal; . . . [or] challenging any part of the process by which [an alien's] removability will be determined," are covered.[16] Here, the claims in the Petition seemingly constitute either (1) a challenge to the decision to detain Petitioner in the first place, or (2) a challenge to the process by which Petitioner's removability will be determined.

As to the former, ICE says it has detained Petitioner pursuant to § 1225(b)(2), which requires detention so that a § 1229a removal proceeding may occur. The Petition directly challenges that decision. Indeed, at the core of the Petition is Petitioner's claim that ICE has acted unlawfully by detaining him pursuant to § 1225(b)(2). If that isn't a challenge to the decision to detain Petitioner in the first place, what is it? Petitioner's response, that this is merely a request for a detention hearing, begs the question rather than answer it. *What* Petitioner is asking for (a detention hearing) cannot be separated from *why* he is asking for it (because he believes ICE acted unlawfully in detaining him under § 1225(b)(2)). Petitioner's claim, after all, is that his case is covered by § 1226a, which authorizes but does not require detention in the first place. Indeed, implicit in § 1226a's requirement of a detention hearing is Congress's recognition that detention is appropriate in some, but not all, cases brought under that section. Again, by challenging the decision to detain him under a statute that *requires detention in the first place*, Petitioner is necessarily… challenging the decision to detain him in the first place.

As to the latter, if the proceedings against Petitioner commenced with the issuance of his Notice to Appear, the case is undoubtedly in the adjudication stage, since no final

---

[16] *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

removal order has been issued. The entire point of his mandatory detention, after all, was so that "a proceeding under section 1229a" could occur.[17] And if challenging the Attorney General's decision to detain Petitioner pursuant to § 1225(b)(2) so that it may adjudicate his removability pursuant to § 1229a isn't a "challenge to the process by which his removability will be determined," what is it? Again, the very crux of the Petition is Petitioner's claim that the government is proceeding against him unlawfully by proceeding under § 1225(b)(2) rather than § 1226a.

To be sure, the Supreme Court noted that Congress knew how to "impose a general jurisdictional limitation" when it so intended, and held that to construe § 1252(g) to bar review of *every* question that touches on the removal process would read the statute to impose such a limitation unseen elsewhere in the law.[18] And the Court understands that district courts have frequently exercised jurisdiction over detention challenges, even in the context of alien detentions,[19] but doing so requires some serious splitting of hairs. And to what end? To evade the plain language of § 1252(g) and seize jurisdiction where Congress seemingly sought to remove it.

All that to say, despite its grave doubts over whether it has subject matter jurisdiction, because it nonetheless rejects Petitioner's claims on the merits the Court will assume that it has subject matter jurisdiction and proceed to the merits.

---

[17] 8 U.S.C. § 1225(b)(2).

[18] *Id.*

[19] *See Zadvydas v. Davis*, 533 U.S. 679, 687 (2001) (citations omitted).

## II.     Petitioner is detained pursuant to 8 U.S.C. § 1225.

Turning to the merits, Respondents object to the R&R's conclusion that 8 U.S.C. § 1225 is ambiguous and its subsequent interpretation of § 1225 as not applying to Petitioner. To be sure, many other district courts to weigh in on this question have reached that same conclusion and found that cases similar to Petitioner's are governed by § 1226(a) rather than § 1225(b)(2).[20] But while district courts are certainly prone to herding, they aren't sheep. And this District Court is convinced that § 1225 unambiguously applies to Petitioner's case.

Everything turns on the meaning of the phrase "applicant for admission." In ascertaining that meaning, the Court starts with how Congress explicitly defined it: as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . ."[21] When Petitioner entered the United States in 1999, he did so without being admitted.[22] He remains present in the United States and concedes he has never been admitted. He thus fits neatly into the definition of an "applicant for admission."[23]

So how did the R&R conclude otherwise? It began by analyzing § 1225's title, "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." But "the title of a statute and the heading of a section cannot limit the

---

[20] *See* Petition (Dkt. 1), ¶33 (collecting cases).

[21] 8 U.S.C. § 1225(a)(1).

[22] R&R (Dkt. 10), at 2.

[23] *Mejia Olalde v. Noem*, Case No. 25-cv-168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025).

plain meaning of the text."[24] And nothing in the title is inconsistent with the plain meaning of the statute's text. The title describes three categories of contents, each separated by a semicolon, and each of which generally describes various parts of § 1225. Nothing about the title's distinct reference to "inspection by immigration officials" and "expedited removal of inadmissible arriving aliens" works to transform the whole of § 1225 into a section applying to only some undefined subset of aliens (those who have "recently" arrived). To do so would ignore both the plain language and broader operation of § 1225, which deals with inspection of recently arrived aliens and "other aliens" alike.[25]

The R&R next noted the placement of § 1225 between § 1224 ("Designation of ports of entry for aliens arriving by aircraft" and § 1225a ("Preinspection at foreign airports"). Because § 1225 is sandwiched between two titles that on their face deal with arriving aliens, and because much of § 1225 deals with the logistics of aliens entering the United States, the R&R concludes that despite what it says, § 1225 is only concerned with *recently* arrived aliens. But this sort of statutory context can't change the meaning of unambiguous statutory language. Moreover, to limit, as the R&R suggests, the reach of § 1225(a)(1) to aliens attempting to enter the United States would *create* confusion in an otherwise clear statute, as § 1225(a)(1) applies to "alien[s] *present* in the United States who

---

[24] *Yates v. United States*, 574 U.S. 528, 559 (2015) (Kagan, J. dissenting) (quoting *Trainmen v. Baltimore & Ohio R. Co.,* 331 U.S. 519, 528–529, (1947) (internal quotations omitted).

[25] *See* 8 U.S.C. § 1225(b)(1)("Inspection of Aliens Arriving in the United States and Other Aliens Who Have Not Been Admitted or Paroled"); 8 U.S.C. § 1225(b)(2)("Inspection of Other Aliens").

ha[ve] not been admitted. . ."[26] Section 1225 is thus plainly concerned with more than just the preadmission process.

Further, in considering § 1225 as a whole, it is notable that § 1225(b)(1)(A)(i) applies to aliens "who [are] arriving in the United States[,]" while § 1225(b)(1)(A)(iii)(II) apples to aliens "who ha[ve] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph."[27] These provisions in the same section show Congress knew how to cabin the definition of "applicant for admission" either by the location of the alien or when the alien had entered the United States illegally, so Congress's decision not to apply a limiting modifier to "applicant for admission" in § 1225(a)(1) is telling. So not only is there an absence of text supporting the idea that an "applicant for admission" can time out of that status, the words that Congress *actually used* in the statute confirm that Congress meant what it said when it unambiguously defined "applicant for admission" without any temporal limitation.

The R&R next turns to § 1225(b)(2)(A)'s statement that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." The R&R reasons that Congress's use of the term "seeking admission" *sub silentio* redefined "applicants for

---

[26] Emphasis added.
[27] *Meija Olalde*, 2025 WL 3131942, at *4.

admission" as only those "presently and actively seeking lawful entry into the United States."[28] But how so? Congress explicitly said that any alien "present in the United States who has not been admitted" is deemed an "applicant for admission."[29] And once deemed an "applicant for admission," an alien is necessarily "seeking admission." Thus, Congress's use of "seeking admission" is perfectly consistent with its unambiguous definition of "applicant for admission," which sweeps in *all* aliens present in the United States but not yet admitted.

And in the end, the R&R's conclusion that Petitioner is not an applicant for admission creates more questions than it answers. It is undisputed that Petitioner is in the United States without being admitted, and if the R&R's conclusion is accepted, Petitioner isn't "seeking admission." So what exactly then *is* Petitioner's legal status? Petitioner never answers that question and the Court cannot find any statute with an answer other than § 1225(a)(1), which explicitly deems Petitioner an applicant for admission. And how long exactly, must an alien be in the United States without admission before he transforms himself from an "applicant for admission" into an alien no longer "seeking admission"? Neither the R&R nor Petitioner has an answer for that question either. And what of the practical effect of such an incoherent immigration regime? Does anyone seriously think

---

[28] R&R, (Dkt. 10), at 14.

[29] *Meija Olalde*, 2025 WL 3131942, at *3 (noting that because § 1225(a)(1) states "[a]n alien present in the United States who has not been admitted or who arrives in the United States ... *shall be deemed* for purposes of this chapter *an applicant for admission[,]*" the provision moves a similarly situated alien into the definition of "applicant for admission" (emphasis added)).

that Congress created a regime that *rewards* those aliens who evade deportation for long enough by making them no longer subject to automatic detention when caught? Such a perverse incentive structure surely wasn't what Congress intended.

The R&R lastly turns to the Laken Riley Act, which amended § 1226 by requiring detention for any alien "inadmissible under paragraph (6)(A), (6)(C), or (7) of" 8 U.S.C. § 1182(a) (which cover aliens who have not been admitted or paroled, who have entered the country by fraud or willful misrepresentation, or without certain documentation, respectively)[30] and who

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.[31]

Because § 1182(a)(6)(A)(i) would appear to apply to aliens like Petitioner who have not been admitted or paroled and who have committed felonies, the R&R reasons that the new amendment would be superfluous if Petitioner, who has not been accused of committing any prior felonies, was also subject to mandatory detention under § 1225(b)(2). But there are undoubtedly situations where § 1226(c)(1)(E) would require detention where § 1225 would not, such as for individuals admitted through fraud who might not otherwise be applicants for admission.[32] And aside from the lack of surplusage, it is hardly surprising

---

[30] 8 U.S.C. § 1226(c)(1)(E)(i)

[31] 8 U.S.C. § 1226(c)(1)(E)(ii).

[32] *Meija Olalde*, 2025 WL 3131942, at *4.

that two statutes, adopted years apart and amid different political climates, might contain overlapping provisions.[33] And it would be passing strange for a bill meant to strengthen immigration enforcement to have actually weakened it by dramatically narrowing the definition of who is an "applicant for admission" and thus subject to mandatory detention. Any overlap between the two provisions is thus better understand as a belt-and-suspenders approach to an immigration crisis.[34]

Lastly, any long-standing agency practice of detaining aliens who entered the United States without inspection pursuant to § 1226 rather than § 1225(b)(2) can't justify ignoring the law. "[A] 'long-established practice' does not justify a rule that denie[s] statutory text its fairest reading,"[35] and rightly so. The Executive Branch's past misreading (or flouting) of the law neither justifies nor compels this Branch to do the same, particularly where, as here, the Executive Branch has never offered a reasoned basis for its practice.

### III.   Petitioner has failed to show a due process violation.

Petitioner has been in ICE custody since October 8, 2025.[36] Petitioner's half-hearted due process claim merely quotes the Fifth Amendment, points to a short, non-doctrinal snippet from *Zadvydas v. Davis*,[37] and then quite conclusory states that he has a

---

[33] *United States v. Smith*, 100 F.4th 1244, 1250 n.6 (10th Cir. 2024).

[34] This understanding is borne out by the text of the Laken Riley Act, which, for example, gives the Attorney General clear commands about *when* certain aliens must be detained, where § 1225 does not. *Meija Olalde*, 2025 WL 3131942, at *4.

[35] *Id.* at *5 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015)).

[36] Petition (Dkt. 1), ¶41.

[37] 533 U.S. 678 (2001).

fundamental liberty interest in "being free from official restraint[,]" and that his detention without a bond redetermination hearing is a violation of that fundamental right. But the very case Petitioner cites for this claim, *Zadvydas*, holds that a six-month detention period is presumptively constitutional and that the government must even then only release a removable alien who makes a showing "that there is no significant likelihood of removal in the reasonably foreseeable future[.]"[38] Petitioner's due process claim is thus denied as premature.

## *Conclusion*

Accordingly, the Court declines to adopt the Report and Recommendation (Dkt. 10) and **DENIES** the Petition (Dkt.1). A separate judgment will follow.

**IT IS SO ORDERED** this 6th day of January 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[38] *Id.* at 701.